**In re Barry Anthony McMICHEN, Brenda Joyce McMichen, Debtors.**

**Bankruptcy No. 81–04971A.**

United States Bankruptcy Court, N. D. Georgia, Atlanta Division.

Oct. 12, 1982.

John E. Sacker, Jr., Clein & Sacker, Atlanta, Ga., for Chrysler Credit Corp.

Jerry W. Holladay, Atlanta, Ga., for debtors.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on Chrysler Credit Corporation's ("Chrysler") Motion for Rehearing and Reconsideration of the June 29, 1982 Order entered in the above-styled Chapter 13 proceeding. In the June 29, 1982 Order, this Court held that Chrysler had not overcome the presumption of the contract rate as the interest to be provided by a debtor for purposes of meeting the requirements of 11 U.S.C. § 1325(a)(5)(B)(ii). On August 18, 1982, a hearing was held on Chrysler's motion, at which time the Court heard evidence and argument of counsel. Based on the evidence presented at the August 18, 1982 hearing, Chrysler's Motion for Rehearing and Reconsideration is granted.

The primary issue before the Court is what interest rate is to be applied to the debtors' obligation to Chrysler. Evidence was taken on this issue at the August 18, 1982 hearing.

Chrysler has shown that if it were to make a new loan on the debtors' vehicle, it would charge a 13% add-on rate as authorized by the Georgia Motor Vehicle Sales Finance Act, Ga.Code § 96–1001 *et seq.* Depending on the duration of the debtors' payments to Chrysler, the annual percent-

age rate into which this add-on rate translates would range from 22.55% for forty-two (42) months to 23.81% for thirty-six (36) months. (See Movant's Exhibit 3, Add-on Rate Conversion Chart.) If this Court were to direct that the interest calculation be based on an add-on rate, the annual percentage rate will change depending on the duration of payments. Therefore, the interest determination for purposes of § 1325(a)(5)(B)(ii) of the Bankruptcy Code will be stated as an annual percentage rate.

The add-on interest rate authorized by the Motor Vehicle Sales Finance Act is the ceiling on the interest which may be charged for financing an automobile. Ga. Code § 96–1004(a) states that the finance charge "shall not exceed the following rates." The fact that a 13% add-on rate is the maximum rate which a creditor may charge to finance the purchase of a "used motor vehicle designated by the manufacturer by a year model of the same or not more than two years prior to the year in which the sale is made"—i.e. a used car more than two years old, does not mean that this is the only interest rate to be used. This interest rate ceiling necessarily takes into account all contingent charges associated with the extension of credit for automobile purchases for an entire loan portfolio. These contingencies would include costs of collection as well as costs associated with protecting a secured creditor's interest in those cases in which a debtor files bankruptcy and seeks to pay his obligation to a creditor under a Chapter 13 plan. While the Motor Vehicle Sales Finance Act contemplates spreading costs over all transactions in which a creditor engages, this Court is concerned about what interest rate will provide Chrysler with the "value, as of the effective date of the plan, of property to be distributed under the plan," as concerns this particular debtor. As stated in the June 29, 1982 Order, this interest rate is presumed to be the contract rate, but this presumption may be overcome.

In the instant case, Chrysler has overcome the presumption of the contract rate by showing that on a vehicle of the same age as the debtors' vehicle, it would obtain a 13% add-on rate. This Court would be amenable to an argument that this interest rate should be discounted in view of the fact that the collection costs typically associated with consumer defaults have already been incurred in this case, and because the exercise of any remedy available to Chrysler under the Georgia Uniform Commercial Code in the event of a default by the debtor in his obligation to Chrysler under the plan would not materially be affected by the filing of a petition under Chapter 13 of the Bankruptcy Code. However, no evidence has been presented concerning how these circumstances can be measured quantitatively. In the absence of such evidence, the annual percentage rate which should be applied to the debtors' obligation to Chrysler under the plan is a 22.55 annual percentage rate based on the facts and circumstances of this case.

The Court notes that the debtors' counsel is of the opinion that there is an apparent split in the Northern District of Georgia concerning the method to be applied to determine interest rates in cases such as the one before the Court. This is not the case, however. *Chrysler Credit Corporation v. Cooper (In the Matter of Cooper)*, 11 B.R. 391 (Bkrtcy.N.D.Ga., 1981), *In the Matter of Clements*, 11 B.R. 38 and 16 B.R. 196 (Bkrtcy.N.D.Ga., 1981) and this case all hold that the contract rate is presumed to be the correct rate to apply for purposes of § 1325 of the Bankruptcy Code where the debt owed on an automobile is being paid under a debtors' plan. These cases hold that this presumption is rebuttable. In *Cooper*, Judge Norton held that this presumption was overcome, as has this Court in the instant case, whereas in *Clements*, Judge Kahn found that the presumption of the contract rate was not overcome.

Therefore, for the above-stated reasons, Chrysler's Motion for Rehearing and Reconsideration is granted, the Court finding that an annual percentage rate of 22.55% should be applied to the debtors' obligation to Chrysler.

IT IS SO ORDERED.