In the Matter of SOUTHERN STATES MOTOR INNS, INC., Debtor.

UNITED STATES of America, Appellant,

v.

SOUTHERN STATES MOTOR INNS, INC., Appellee.

No. 82–5518.

United States Court of Appeals, Eleventh Circuit.

July 11, 1983.

Glenn L. Archer, Jr., Michael L. Paup, Wynette J. Hewett, Mary L. Fahey, Tax Division, Dept. of Justice, Washington, D.C., for appellant.

Jules S. Cohen, Orlando, Fla., S.J. Zusmann, Jr., Atlanta, Ga., for appellee.

Before JOHNSON and ANDERSON, Circuit Judges, and COLEMAN *, Senior Circuit Judge.

R. LANIER ANDERSON, III, Circuit Judge:

█ The sole issue on this appeal concerns the proper method for determining the rate of interest to be applied in calculating deferred payments of delinquent federal taxes pursuant to § 1129(a)(9)(C) of the Bankruptcy Code, 11 U.S.C. § 1129(a)(9)(C). The Bankruptcy Court applied the then-current rate of interest established by the formula set forth in 26 U.S.C. § 6621 for interest on unpaid federal tax liabilities generally,[1] less a 1% reduction for the "rehabilitation aspects" of the plan of reorganization. The district court affirmed on the ground that the Bankruptcy Court's finding did not constitute reversible error. For the reasons discussed below, we reverse.

The facts of this case are undisputed. The debtor, Southern States Motor Inns, Inc., filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on October 23, 1979. Appellant, the United States, filed a priority[2] proof of claim for unpaid federal tax liabilities totaling $412,144.93. Subsequently, the debtor proposed a reorganization plan under which appellant's tax claims would be paid in five annual installments. Appellant objected to the plan because it did not provide for the payment of interest on the deferred tax payments. The debtor then amended the plan to provide for the payment of interest at a 6% rate, but appellant maintained its objection to the plan on the ground that the 6% rate was inadequate. Consequently, the Bankruptcy Court conducted a hearing on April 14, 1981, to determine the rate which should be applied in calculating interest on the deferred tax liabilities.

At the hearing, the debtor presented evidence indicating that the interest rate on mortgages recently obtained in connection with the sale of its motel property ranged from 9.1% to 10%. Appellant responded by presenting an expert witness who testified that at that time the minimum interest rate on safe investments, such as U.S. Treasury obligations, was 14%, and that interest rates on riskier investments, such as an unsecured loan to the debtor, were even higher. Appellant agreed, however, to accept a 12%

---

* Honorable James P. Coleman, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. As of April 28, 1981, the date the plan of reorganization was confirmed, 26 U.S.C. § 6621 provided as follows:

   DETERMINATION OF RATE OF INTEREST
   (a) *In General.*—The annual rate established under this section shall be such adjusted rate as is established by the Secretary under Subsection (b).
   (b) *Adjustment of Interest Rate.*—The Secretary shall establish an adjusted rate of interest for the purpose of subsection (a) not later than October 15 of any year if the adjusted prime rate charged by banks during September of that year, rounded to the nearest full percent, is at least a full percentage point more or less than the interest rate which is then in effect. Any such adjusted rate of interest shall be equal to the prime rate charged by banks, rounded to the nearest full percent, and shall become effective on February 1 of the immediately succeeding year. An adjustment provided for under this subsection may not be made prior to the expiration of 23 months following the date of any

preceding adjustment under this subsection which changes the rate of interest.
   (c) *Definition of Prime Rate.*—For purposes of subsection (b), the term "adjusted prime rate charged by banks" means 90 percent of the average predominant prime rate quoted by commercial banks to large businesses, as determined by the Board of Governors of the Federal Reserve System.
   Pub.L. No. 93–625, 88 Stat. 2108 (1975), as amended by Pub.L. No. 94–455, 90 Stat. 1520 (1976), and by Pub.L. No. 96–167, 93 Stat. 1275 (1979). Subsequently, Congress amended the statute on two occasions. First, Congress struck the last sentence of paragraph (b) which prevented more than one change within a 23-month period, substituted January 1 for February 1 in paragraph (b), and struck the words "90 percent of" preceding the words "the average predominant prime rate" in paragraph (c). *See* Pub.L. No. 97–34, 95 Stat. 340 (1981). Recently, Congress divided paragraph (b) into numbered subsections and, *inter alia*, substituted provisions for determining the rate of interest every six months. *See* Pub.L. No. 97–248, 96 Stat. 636 (1982).

2. The government's unsecured tax claim was entitled to priority under 11 U.S.C. § 507(a)(6).

rate, which was the then-current interest rate established by 26 U.S.C. § 6621.[3]

At the conclusion of the hearing, the Bankruptcy Court stated:

> I'm going to hold in this case, as well as other cases that come before me, until some Appellate Court says that I shouldn't do it this way, I'm going to commit myself to the statutory figure that the I.R.S. establishes, less 1%. That 1% I'm going to utilize is for purposes of the rehabilitation aspects that Congress apparently intended that the Court utilize in deciding whether to confirm a plan, so in this case, since the I.R.S.'s statutory figure is 12%, then I'm going to take off 1% for the rehabilitation aspects, and I'm going to commit to 11%.

Record on Appeal at 57–58.

Appellant sought review of the Bankruptcy Court's order in the district court. On February 24, 1982, the district court affirmed the order on the ground that the interest rate set by the bankruptcy court did not constitute reversible error.[4] This appeal followed.

■ Section 1129(a)(9)(C) of the Bankruptcy Code provides, in essence, that a Bankruptcy Court shall confirm a plan of reorganization only if the holder of a priority tax claim will receive "on account of such claim deferred cash payments ... of a value, as of the effective date of the plan, equal to the allowed amount of such claim." Id.[5] The legislative history of the Code indicates that Congress used the phrase "value, as of the effective date of the plan" in order to insure that creditors with priority tax claims who were required to accept

payments over time would receive deferred payments equivalent to the present value of their claims. See, e.g., 124 Cong.Rec. 32,-406, 34,006 (1978) (joint explanatory statement of floor managers, Sen. DeConcini & Rep. Edwards, indicating that governmental unit tax claims entitled to priority under § 507(a)(6) "may be required to take deferred cash payments over a period not to exceed 6 years after the date of assessment of the tax *with the present value equal to the amount of the claim*") (emphasis added); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 408 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6364 (stating that " '[v]alue, as of the effective date of the plan,' as used in ... proposed 11 U.S.C. ... 1129(a)(9) [and several other sections], indicates that the promised payment under the plan must be discounted to present value as of the effective date of the plan"); *cf. id.* at 412, U.S.Code Cong. & Admin.News 1978, p. 6368 ("[T]he court may confirm a plan over the objection of a class of secured claims if the members of that class are unimpaired or if they are to receive under the plan property of a value equal to the allowed amount of their secured claims .... The property is to be valued as of the effective date of the plan, thus recognizing the time-value of money."). The Bankruptcy Courts have almost uniformly ruled that the proper method of providing such creditors with the equivalent of the value of their claim as of the effective date of the plan is to charge interest on the claim throughout the payment period. See, e.g., *In re Bay Area Services,* 10 Bankr.Ct.Dec. (CRR) 101, 26 B.R. 811 (Bkrtcy.M.D.Fla.1982); *In re*

---

3. *See* note 1 *supra.*

4. The district court expressly limited its affirmance to the facts of this case and did not rule "one way or the other on the gratuitous comments of the Bankruptcy Judge that henceforth he will in Chapter XI cases set interest at 1% off the rate then currently set by the [IRS] for interest owed the Service ...." Record on Appeal at 140 n. 1.

5. 11 U.S.C. § 1129(a) states in relevant part:
   The court shall confirm a plan only if all of the following requirements are met:

   .    .    .    .    .

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—

   .    .    .    .    .

(C) With respect to a claim of a kind specified in section 507(a)(6) of this Title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

*Moore,* 9 Bankr.Ct.Dec. (CRR) 1246, 25 B.R. 131 (Bkrtcy.N.D.Tex.1982); *cf. In re Busman,* 5 B.R. 332, 341 (E.D.N.Y.1980) (holding that identical language in 11 U.S.C. § 1325(a)(5)(B)(ii) requires that when secured tax claim is to be paid in installments pursuant to a Chapter 13 plan, the creditor "is entitled to a percentile interest factor, to protect the creditor from loss caused by its being paid over time"). *But see In re Burgess Wholesale Manufacturing Opticians,* 16 B.R. 733 (Bkrtcy.N.D.Ill.) (holding that there is no right to post-petition interest on unsecured tax claims in Chapter 11 proceeding when other unsecured creditors are not paid in full), *aff'd,* 24 B.R. 554 (N.D.Ill. 1982).

Although Bankruptcy Courts generally agree that creditors should receive interest on deferred tax payments pursuant to § 1129(a)(9)(C), they have not agreed on the proper method for determining the appropriate interest rate. *See, e.g., In re Bay Area Services, supra* (current prevailing prime rate plus 10% adjustment for inflation); *In re Hathaway Coffee House,* 9 Bankr.Ct.Dec. (CRR) 1093, 24 B.R. 534 (S.D. Ohio 1982) (in the absence of any contrary argument by debtor, government entitled to rate set in 26 U.S.C. § 6621); *In re Moore, supra* (rejecting IRS argument that rate established by 26 U.S.C. § 6621 should be applied because uncontradicted evidence presented by debtor demonstrated that lower rate would fully compensate the government); *In re Tacoma Recycling,* 23 B.R. 547 (Bkrtcy.W.D.Wash.1982) (rate established by 28 U.S.C. § 1961(a) (§ 302(a) of the Federal Court Improvement Act of 1982) for interest on judgments in federal court). *Compare, e.g.,* the following cases in which courts used various methods of determining the proper interest rate necessary to give a creditor the value of its claim as of the effective date of the plan in Chapter 13 proceedings: *In re Benford,* 14 B.R. 157 (Bkrtcy.W.D.Ky.1981) (prevailing market rate for consumer loan contracts); *In re Klein,* 10 B.R. 657 (Bkrtcy.E.D.N.Y.1981) (average of legal rate of interest in State of New York and contract rate); *In re Marx,* 11 B.R. 819 (Bkrtcy.S.D.Ohio 1981) (rate applicable to judgments); *In re Crotty,* 11 B.R. 507 (Bkrtcy.N.D.Tex.1981) (rate established by 26 U.S.C. § 6621); *GMAC v. Willis (In re Willis),* 6 B.R. 555, 557 (Bkrtcy.N. D.Ill.1980) ("annual percentage rate not to exceed ½ of 1% more than the auction average of 3-month United States Treasury Bills" for the week the petition for relief was filed); *GMAC v. Hyden (In re Hyden),* 10 B.R. 21 (Bkrtcy.S.D.Ohio 1980) (average of the interest rate in effect in Ohio for Installment Sales Contracts, the interest rate stated in the contract, and an arbitrary "leveling factor" of 6%); *In re Ziegler,* 6 B.R. 3 (Bkrtcy.S.D.Ohio 1980) (rate established by 26 U.S.C. § 6621 even though the creditor was not a governmental entity); *GMAC v. Lum (In re Lum),* 1 B.R. 186 (Bkrtcy.E.D.Tenn.1979) (adopting 10% rate after considering the contract rate of interest, the relevant state statute regulating interest, and "economic concerns").

In determining the interest rate in this case, the Bankruptcy Court adopted the rate established by 26 U.S.C. § 6621 less a 1% reduction for "rehabilitation aspects." We believe that this was an inadequate method for determining a rate which would give appellant deferred payments equal to the present value of its claim as required by § 1129(a)(9)(C).

The factors relevant to determining an appropriate interest rate are succinctly summarized in 5 Collier on Bankruptcy ¶ 1129.03, at 1129–65 (15th ed. 1982):

> The appropriate discount [interest] rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount [interest] rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default.

The interest rate computed under the formula set out in 26 U.S.C. § 6621 does not meet this criteria for two reasons. First, the § 6621 rate does not necessarily correspond with the "prevailing market rate." At the time of the confirmation hearing,

when the bankruptcy judge ruled that he would henceforth use the § 6621 rate less 1%, the § 6621 interest rate could lag almost two years behind actual market rates. *See* note 1 *supra.* Even with the recent amendments to § 6621, *see id.,* the § 6621 rate in effect on the date of a confirmation hearing will have been established from three and one-half to nine and one-half months previously. In view of recent fluctuations in interest rates, it is obvious that the § 6621 rate often will differ significantly from actual market rates. *See, e.g., In re Moore,* 9 Bankr.Ct.Dec. (CRR) at 1248, 25 B.R. 131 ("application of § 6621 could result in a windfall to IRS" because § 6621 rate was 20% while debtors uncontradicted evidence established that market rates as of date of hearing were 12%); *In re Tacoma Recycling,* 23 B.R. at 556 (rejecting § 6621 rate as not "indicative of current economic conditions"); *In re Bay Area Services,* 10 Bankr.Ct.Dec. (CRR) at 103, 26 B.R. 811 (labeling § 6621 rate "static and arbitrary when applied to the deferred payment of an unsecured priority tax claim where the primary intent is [to] provide the Government with a future amount equal in value to an amount paid in full upon the effective date of [the plan] ). Second, applying the § 6621 rate to all deferred payments under § 1129(a)(9)(C) ignores variations between the length of the payout period, the quality of the security, and the risk of subsequent default.[6] Thus, although the rate currently charged under § 6621 may be relevant to determining the prevailing market rate,[7] we believe the Bankruptcy Court erred by looking exclusively to the § 6621 rate when establishing the interest rate in this case.

■ In addition, we believe the district court erred when it deducted 1% from the interest rate to be applied to the deferred payments for the "rehabilitation aspects" of the reorganization plan. As noted in *In re Benford, supra,* a Chapter 13 case construing language identical to that found in § 1129(a)(9)(C) "[t]he statute reads 'value, as of the effective date of the plan'; it does not read 'value, as of the effective date of the plan, but subject to reduction depending on the debtor's ability to pay'." 14 B.R. at 161. We believe Congress intended that creditors required to accept deferred payments pursuant to § 1129(a)(9)(C) should be placed in as good a position as they would have been had the present value of their claims been paid immediately.[8] Consequently, we hold that the interest rate to be used in computing present value of a claim

**6.** The variations between length of payout period, quality of security, and risk of default under § 1129(a)(9)(C) may be relatively small because that section only deals with unsecured loans which must be paid within a six-year period. Nevertheless, the potential variations are not so insignificant that a single interest rate would be appropriate for all situations. Moreover, the phrase "value, as of the effective date of the plan" appears in several other subsections of § 1129 as well as in Chapter 13, *see* 11 U.S.C. §§ 1129(a)(7)(B), (a)(9)(B)(i), (b)(2)(A)(i)(II), (b)(2)(B)(i), (b)(2)(C)(i), 1325(a)(4), (a)(5)(B)(ii), and applies to a wide variety of claims. Neither the statute nor the legislative history suggests that "value" as used in § 1129(a)(9)(C) should be determined simply by reference to § 6621 while "value" as used in the other sections should be determined by an analysis of market rates, and we seriously doubt that Congress intended that the § 6621 rate should be used to determine value in all of these sections.

**7.** As one commentator has suggested, deferred payment of a claim under § 1129 is a "coerced loan and the rate of return with respect to such loan must correspond to the rate which would

be charged or obtained by the creditor making a loan to a third party with similar terms, duration, collateral, and risk. 15 Collier on Bankruptcy ¶ 1129.03, at 1129–62 & 63. A taxpayer can obtain an involuntary "loan" from the government by failing to pay his taxes, and the government then is entitled to interest on the delinquent liabilities at the rate set by § 6621. Thus, the § 6621 rate may be relevant because it is the rate at which the government would make a "loan" to a third party. We do not believe, however, that the § 6621 rate should be the exclusive measure of the rate which will give the government the value of its claim as of the effective date of the plan.

**8.** It is noteworthy that under prior law federal tax claims of the type involved here, as well as the claims of certain private creditors, had to be paid in full before a plan of reorganization could be confirmed. *See, e.g.,* Bankruptcy Act of 1898, ch. 541, §§ 64, 199, 30 Stat. 544 (11 U.S.C. 1976 ed. §§ 104, 599) (repealed 1978). The Senate version of the Bankruptcy Reform Act of 1978 originally provided that such claims had to be paid in cash within 60 days of the confirmation of the plan, S.Rep. No. 95–

pursuant to § 1129(a)(9)(C) should be the current market rate without any reduction for the "rehabilitation aspects" of the plan.[9]

In this case, the evidence presented by appellants established that the prevailing market rate for comparable unsecured loans at the time the plan became effective was greater than 14%.[10] At the confirmation hearing, in its brief on appeal and at oral argument, however, appellant agreed to accept a 12% rate. Accordingly, because the record would not permit a finding that the appropriate interest rate was less than the 12% rate which is acceptable to appellant,[11] we reverse the judgments rendered below and remand with instructions to apply a 12% rate of interest in calculating the amount of the deferred payments due to the United States under the provisions of § 1129(a)(9)(C).[12]

REVERSED AND REMANDED WITH INSTRUCTIONS.

989, 95th Cong., 2d Sess., 128 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787, and subsequently was amended to provide for cash payment within 120 days. *Id.* The final version enacted by Congress permitted deferred cash payments, but indicated that the creditor should receive the value of the claim as of the effective date of the plan. Nothing in the legislative history indicates that Congress intended reductions in the amount to be received by the creditor on account of the rehabilitation aspects of the plan.

9. Our holding does not indicate that the debtor's ability to pay is not a factor the court should consider when deciding whether to confirm a plan of reorganization. Obviously, a plan should not be confirmed unless it is feasible. The debtor's ability to pay, however, is irrelevant when the question is whether the plan provides for payment of the present value of a creditor's claim as required by § 1129(a)(9)(C).

10. As noted above, the debtor also presented evidence regarding current interest rates at the confirmation hearing. The debtor's evidence, however, related to secured loans rather than unsecured loans, and the record also suggests that the interest rates on those secured loans

may not have been the product of arm's-length negotiations. Consequently, we do not believe the debtor's evidence accurately reflected prevailing market rates for unsecured loans.

11. The usual procedure when findings are infirm because of an erroneous view of the law is to remand for further proceedings, but such proceedings are not required when the record permits only one resolution of the factual issue. *Pullman-Standard v. Swint,* 456 U.S. 273, 292, 102 S.Ct. 1781, 1792, 72 L.Ed.2d 66, 82 (1982).

12. At oral argument, the debtor for the first time suggested that appellant's appeal was moot because there are insufficient funds to pay interest at a 12% rate rather than at the 11% rate set by the courts below. In rebuttal, appellant contended that sufficient funds are available to pay the higher interest rate or, in the alternative, that if sufficient funds are not available, the debtor's assets could be liquidated pursuant to 11 U.S.C. § 1112(b). We cannot resolve this factual dispute on the current record. If the Bankruptcy Court finds on remand that there are insufficient funds to pay interest at the 12% rate, then the court will have to determine the proper alternative resolution in a manner not inconsistent with this opinion.