**In re Robert Lee CORLEY, Debtor.**

**Bankruptcy No. 687–00182.**

United States Bankruptcy Court,
S.D. Georgia,
Statesboro Division.

March 10, 1988.

---

R. Kenny Stone, Statesboro, Ga., for plaintiff/movant.

Lee Ringler, Augusta, Ga., for defendant/respondent.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

JOHN S. DALIS, Bankruptcy Judge.

In conjunction with the confirmation hearing on the debtor's proposed Chapter 13 plan, hearing was held on the objection to confirmation filed by General Motors Accceptance Corporation ("GMAC") and objection to the claim of General Motors Acceptance Corporation filed by the debtor. The Court makes the following

## FINDINGS OF FACT

1. The debtor filed his Chapter 13 petition July 13, 1987 along with a plan, proposing in pertinent part to surrender the collateral securing the debt of GMAC/Colonial Pontiac with a value of Ten Thousand and No/100 ($10,000.00) Dollars in full satisfaction of the debt upon confirmation of the plan.

2. On August 4, 1987 GMAC filed a proof of claim in the amount of Seventeen Thousand Two Hundred Seventy Five and 88/100 ($17,275.88) Dollars secured by a purchase money security interest in one 1986 Jeep Commanche pickup truck vehicle identification No. 1JTWL6570GT080319.

3. On September 25, 1987, prior to confirmation, the debtor modified his Chapter 13 plan to value the collateral of GMAC at

Six Thousand Six Hundred and No/100 ($6,600.00) Dollars and proposed a composition plan paying to the Chapter 13 Trustee the sum of Thirty Eight and No/100 ($38.00) Dollars weekly for a period of sixty (60) months.

4. At the confirmation hearing held November 24, 1987 GMAC objected to the plan and the Chapter 13 Trustee objected to confirmation based upon a present delinquency in payments to the Chapter 13 Trustee office in the amount of One Hundred Thirty Eight and 15/100 ($138.15) Dollars. The confirmation hearing was continued.

5. On December 2, 1987 the debtor objected to the claim of GMAC, asserting that the claim included unmatured interest contrary to § 502(b)(2) of the Bankruptcy Code. GMAC does not dispute the objection.

6. On December 14, 1987 the debtor filed an additional modification to the proposed Chapter 13 plan in pertinent part relative to GMAC proposing "payments to GMAC through the Chapter 13 Trustee in the sum of One Hundred Thirty Nine and No/100 ($139.00) Dollars monthly until the secured claim in the sum of Six Thousand Six Hundred and No/100 ($6,600.00) Dollars plus Nine and One Half (9.50%) percent interest has been paid in full; the balance of the claim to be paid as unsecured (GMAC). Debtor to maintain insurance and taxes for benefit of GMAC."

7. At the continued confirmation hearing January 7, 1988 the Chapter 13 Trustee reported that without consideration of any interest payment to GMAC on the secured portion of its debt the dividend to unsecured creditors equaled 20.8 percent.

8. The undisputed net pay off balance due GMAC is Twelve Thousand Seven Hundred Sixty and 10/100 ($12,760.10) Dollars.

9. The undisputed fair market value of GMAC's collateral is Six Thousand Six Hundred and No/100 ($6,600.00) Dollars.

## ISSUE

The sole issue is the appropriate rate of interest for deferred compensation to a secured creditor to meet the confirmation requirements of 11 U.S.C. § 1325(a)(5)(B)(ii).

## CONCLUSIONS OF LAW

11 U.S.C. § 1325(a)(5)(B)(i) and (ii) provide:

(a) Except as provided in subsection (b), the Court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; ...

Many courts have addressed the requirements of this section and the similar confirmation criteria for Chapter 11 in Section 1129.[1] Aside from the source to be relied upon for the applicable interest rates, authority appears split as to the basic approach to establish "value as of the effective date of the plan" as used in 11 U.S.C. § 1325(a)(5)(B)(ii) as well as the confirmation criteria under Chapter 11. Clear statements of the two views are expressed in *Collier on Bankruptcy*. 5 *Collier on Bankruptcy* ¶ 1325.06 (15th ed., 1987) states in pertinent part:

"The purpose of the present value requirement is to place the holder of an allowed secured claim in the same position economically as if the debtor exercised the option of surrendering the collateral. Through the payment of interest, the creditor is compensated for the delay in receiving the amount of the allowed secured claim, which would be received in full immediately upon confirmation if the collateral were liquidated. Since the creditor is deprived of these

---

1. A thorough overview of the decisions applying various rates of interest in meeting the confirmation requirement of "value, as of the effective date of the plan" are set forth in *In re Southern* States Motor Inns, Inc. 709 F.2d 647 (11th Cir., 1983) and *In re Mitchell* 77 B.R. 524 (Bankr.E.D. Pa., 1987).

funds to the extent they are deferred through the plan, the creditor must obtain them elsehwere for whatever purposes they were to be used. In view of this purpose, the appropriate discount rate is one which approximates the creditor's cost of funds in its business borrowing."

Contrastingly, 5 *Collier on Bankruptcy* ¶ 1129.03 (15th ed., 1987) states:

"It is submitted that deferred payment of an obligation under a plan is a coerced loan and the rate of return with respect to such loan must correspond to the rate which would be charged or obtained by the creditor making a loan to a third party with similar terms, duration, collateral and risk. It is therefore submitted that the appropriate discount rate must be determined by reference to the 'market' interest rate."

The distinction is whether the prevailing market rate of interest to be applied should consider the creditworthiness of the debtor or the creditor. The Court of Appeals for the Eleventh Circuit has indicated that the creditworthiness of the debtor, not the creditor, is a critical factor. *In re Southern States Motor Inns, Inc.* 709 F.2d 647 (11th Cir., 1983). Although this decision dealt solely with the appropriate interest rate which would give the creditor (United States of America under tax claim) deferred payments equal to the present value of its claim as required by 11 U.S.C. § 1129(a)(9)(C), the court's analysis of the appropriate rate of interest to be charged referenced numerous decisions under Chapter 13 which construed the identical language found in Section 1129, "value, as of the effective date of the plan".[2]

A reading of Sections 1129, 1225 and 1325 reveals that each section pertaining to secured creditors uses this same term, and there is no sound reason for construing this term differently in a Chapter 11, Chapter 12 or Chapter 13 proceeding. Whatever "value, as of the effective date of plan" means, it means the same in Chapter 11, Chapter 12 and Chapter 13 proceedings. The factors to be applied in determining prevailing market rates of interest are (1) the length of the payout, (2) the quality of the security and (3) the risk of subsequent default. *In re Southern States Motor Inns, Inc., supra,* at 652.

In the present proceeding, the debtor's proposed plan sets forth an interest rate of Nine and One Half (9.50%) percent. In reaching this figure the debtor relies upon the analysis set forth in *In re Mitchell* 77 B.R. 524 (Bankr.E.D.Pa., 1987) which establishes a rule in determining the interest rate for deferred plan payments under either § 1325(a)(5)(B)(ii) or § 1129(a)(9)(C) at the lesser of (1) the contract rate or (2) the rate of yield for treasury bills due to mature on the date of the termination of the debtor's plan (rounded off to the nearest quarter percent). In *Mitchell* a 10% rate was determined by using the current treasury bill rate of 8.9% rounded to 9.0% plus 1.0% evidently to take into account a "risk factor" to satisfy the *In re Southern States Motor Inns, Inc.* criteria. In the present proceeding the debtor has followed the *Mitchell* formula by applying the current 5-year treasury bill rate of 8.37% rounded to 8.50% plus a 1.0% risk factor for the proposed rate of 9.50%.[3] The creditor has relied upon *Chrysler Credit Corp. v. Cooper* 11 B.R. 391 (Bankr.N.D.Ga., 1981) and *In re McMichen* 23 B.R. 497, 7 C.B.C. 2d. 618 (Bankr.N.D.Ga., 1982) which state

**2.** *In re Southern States Motor Inns, Inc.* supra at page 652 Footnote 6 provides in part:
"... the potential variations are not so insignificant that a single interest rate would be appropriate for all situations. Moreover the phrase "value", as of the effective date of the plan" appears in several other subsections of § 1129 as well as Chapter 13, see 11 U.S.C. § 1129(a)(7)(b), (a)(9)(b)(i), (b)(2)(a)(i)II, (b)(2)(b)(i), (b)(2)(c)(i), 1325(a)(4), (a)(5)(B)(ii), and applied to a wide variety of claims. Neither the statute nor the legislative history suggest that "value" as used in § 1129(a)(9)(c) should be determined simply by reference to § 6621 while "value" as used in other sections should be determined by analysis of market rates, ..."
See also 11 U.S.C. 1225(a)(5)(B)(ii) enacted after *In re Southern States Motor Inns, Inc.* decision.

**3.** Current 5-year treasury bill rate, of 8.37% as reported in *Barron's* Vol. LXVIII, No. 1, January 4, 1988 ed. at page 108.

that there is a presumption that the contract rate of interest is the appropriate rate in a deferred plan of payment in insisting upon the contract rate of 17.2%. Both methods set forth easily determined rates of interest, but neither comply with the requirements set forth in *In re Southern States Motor Inns, Inc.*

The debtor's formula relies upon the creditworthiness of the creditor, the creditor's cost of funds in its business borrowing, with a 1.0% upward adjustment for the risk factor differential between a treasury bill rate backed by the full faith and credit of the United States of America, and the creditworthiness of this individual debtor. This method appears to be an effort to blend the borrowing ability of this creditor with the risk taken by the creditor in investing in this debtor. Even if this analysis were proper, a risk factor of only 1.0% is inappropriate. The creditor merely relies upon the contract rate to meet this criteria thereby ignoring the plain language of the Bankruptcy Code, which requires that "the value, as of the effective date of the plan" be determinative.

The debtor's reliance upon the *Mitchell* decision raises another important factor for consideration. In reaching any determination of the prevailing rate of interest care must be taken to prevent the creditor from profiting from the debtor's filing. *In re Mitchell, supra,* at 529. In adopting the 5 *Collier on Bankruptcy* ¶ 1325, analysis, the debtor's proposed rate of interest eliminates all profit expectation of the creditor. To allow the creditor to profit from the filing would be totally inequitable to the debtor by placing an additional financial burden on him and penalizing his efforts towards rehabilitation. Additionally, as evidenced in the present proceeding, a composition Chapter 13 plan proposing to pay unsecured creditors less than the full amount of their allowed claims, any additional profit paid to the secured creditor is

ultimately at the expense of the unsecured creditors. However, this formula goes too far. The proper analysis should be limited to preventing additional profit to the lender by virtue of the bankruptcy filing, not to totally eliminate the profit expectation that existed at the time of the transaction.

■ In any arms length transaction involving the extension of credit there is an expectation of profit on the part of the lender. Through the borrower's filing of a bankruptcy petition, the requirements of the Bankruptcy Code may force a reduction or elimination of that expectation.[4] However, the Bankruptcy Code in dealing with secured creditors in Chapter 11, 12, and 13 proceedings requires that the secured creditor receive value, as of the effective date of the plan. The formula of the debtor follows the theory in *Mitchell* that the creditor must go into the market place to borrow the capital represented by the fair market value of the creditor's collateral retained by the debtor in order to return the capital to its lending business. Therefore, the cost of the borrowed funds is the appropriate rate of interest to be charged the debtor. The better analysis is that the purpose of the present value requirement is to place the holder of an allowed secured claim in the same position economically as if the debtor exercised the option of surrending the collateral. Through the payment of interest, the creditor is compensated for the delay in receiving the amount of the allowed secured claim which would be received in full immediately upon confirmation if the collateral were liquidated and the capital returned to the creditor's lending business. As the creditor is prevented from taking possession of its collateral, disposing of same and returning the capital to its lending business, the appropriate rate of interest is the prevailing market rate of interest in similar loan transactions as the transaction involving the debtor.

---

**4.** In a Chapter 7 no asset case unsecured creditors receive nothing. In a Chapter 13 composition case creditors holding a nonpossessory, nonpurchase money security interest in household goods following lien avoidance are treated as unsecured creditors receiving a pro rata dis-

tribution which may be less than full payment. In a Chapter 12 case, unsecured creditors may receive a pro rata distribution from the net farm operation profit which may be minimal or nonexistent. In a Chapter 11 case unsecured creditors may receive less than full payment.

Implicit in the *Southern States Motor Inns, Inc.* decision is the requirement for a case by case analysis to determine the prevailing market rate of interest. In formulating the appropriate rate of interest utilizing as criteria the length of the payout period, the quality of the security, and the risk of subsequent default, the analysis must include the nature of the transaction, the type of creditor and type of debtor.

In the present proceeding, the appropriate rate of interest to be charged on a secured portion of this creditor's debt is the lesser of the contract rate or the prevailing market rate of interest charged by lenders in financing the sale of new motor vehicles to individuals in the same general economic class of the debtor, which class can be presumed without evidence to the contrary to be the general creditworthy population for a period of five (5) years, the proposed payout under the plan. The rate of interest charged in the underlying contract has direct bearing in determining value, as of the effective date of the plan, only if the date of the underlying transaction is within close proximity to the effective date of the plan. The current treasury bill rate or any other such investment rate of return has little bearing under the present fact situation. Previous efforts in other decisions to utilize the rate of return on investment instruments appear to be efforts to eliminate the possibility of the creditor profiting from the debtor's bankruptcy filing. Under the foregoing analysis this potential is eliminated. The profit expectation to the creditor derived from the transaction is provided for at the time of the loan, not by virtue of the filing. As this criteria limits the rate to not more than the contract rate of interest, no profit is realized by the creditor by virtue of the debtor's filing.

### ORDER

As no evidence has been put forth to meet the foregoing criteria, an additional hearing is required. The Clerk is directed to set a hearing for the limited purpose of establishing the appropriate prevailing rate of interest to be charged on the secured portion of this creditor's claim. The objection of the debtor to the claim of GMAC is sustained. The claim is reduced to Twelve Thousand Seven Hundred Sixty and 10/100 ($12,760.10) Dollars with Six Thousand Six Hundred and No/100 ($6,600.00) Dollars secured plus interest to be determined by later order and Six Thousand One Hundred Sixty and 10/100 ($6,160.10) Dollars as unsecured.