Revised November 12, 1999

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 98-31016

---

In The Matter Of: LAURENCE LUCIUS LAMBERT,

Debtor.

MISSISSIPPI STATE TAX COMMISSION,

Appellant,

versus

LAURENCE LUCIUS LAMBERT,

Appellee.

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

November 11, 1999

Before POLITZ, HIGGINBOTHAM, and DAVIS, Circuit Judges.

POLITZ, Circuit Judge:

The Mississippi State Tax Commission appeals the district court's affirmance

of a ruling by the bankruptcy court respecting the proper rate of interest on a state

tax liability of the bankruptcy debtor. For the reasons assigned, we affirm.

## BACKGROUND

On July 15, 1997, Laurence Lucius Lambert submitted his third amended proposed plan of reorganization under Chapter 11 of the bankruptcy code. The Mississippi State Tax Commission objected thereto on several grounds. After a confirmation hearing, the bankruptcy court confirmed Lambert's proposed plan and directed the parties to submit post-hearing briefs on the two remaining issues: the rate at which Lambert's tax liability should accrue interest, and whether quarterly or monthly payments were required. In due course the bankruptcy court held that 11 U.S.C. § 1129(a)(9)(C) permitted the debtor to pay a market rate of interest to the Commission on a quarterly basis and confirmed Lambert's plan.

The Commission appealed to the district court, contending that 11 U.S.C. § 1129(a)(9)(C) requires that post-petition claims for deferred taxes accrue interest at the rate set by the Mississippi taxing statutes and not, as the bankruptcy court held, at the market rate. The district court rejected the Commission's contentions and affirmed the bankruptcy court's holding that 11 U.S.C. § 1129(a)(9)(C) requires a market rate of interest. This appeal followed.

## ANALYSIS

The sole issue posited by this appeal is whether the post-petition interest on a tax liability under 11 U.S.C. § 1129(a)(9)(C) accrues at the market rate or at the

2

statutory rate set by the taxing entity.  As applied in the instant case, the question is whether Lambert must pay post-petition interest at the 12% annual rate required by MISS. CODE ANN. § 27-7-53(3), or the recognized market rate.[1]  The interpretation of 11 U.S.C. § 1129(a)(9)(C) poses a legal question which we review *de novo*.[2]

Under 11 U.S.C. § 1129(a)(9)(C), a plan may give a holder of an unsecured tax claim "deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim." In interpreting this section to require a market rate of interest, both the bankruptcy court and the district court relied on an analysis provided in COLLIER ON BANKRUPTCY:

> [The] language is the Code's signal that the present value of the payment stream offered has to equal the allowed amount of the claim. This is typically done by providing a payment stream that will equal in principal payments the allowed amount of the claim and which carries a market rate of interest. Many governmental entities have special interest rate provisions which are, in nonbankruptcy cases, applied to tax claims. Section 1129(a)(9)(C), however, has been interpreted to require a market rate of interest, to which the tax rate

---

[1]The Commission does not advise that its 12% per annum interest rate reflects the market rate of interest or that it is adjusted to reflect current market conditions.  Thus, the sole issue before us is whether its statutory rate of interest is appropriate under 11 U.S.C. § 1129(a)(9)(C).

[2]**In re Garcia**, 955 F.2d 16 (5th Cir. 1992).

3

may be relevant, but is certainly not determinative.[3]

COLLIER thus suggests that 11 U.S.C. § 1129(a)(9)(C) treats the bankruptcy debtor's nonpayment of taxes as a loan from the state to the debtor, for which the state receives compensation at the prevailing market rate.

Two decisions by our sister circuit colleagues cited by COLLIER in support of the market rate, **In re Camino Real Landscape Maintenance Contractors, Inc.**[4] and **In re Southern States Motor Inns, Inc.**,[5] provide further support for the proposition that the market rate is the proper rate of interest on deferred taxes under 11 U.S.C. § 1129(a)(9)(C). In both cases, the United States contended that the rate of interest set forth in 26 U.S.C. § 6621 for unpaid federal tax liabilities was the appropriate rate of interest for calculating deferred payments of federal taxes under 11 U.S.C. § 1129(a)(9)(C). Both circuit courts turned to the legislative history to determine the meaning of the phrase "value, as of the effective date of the plan" and the proper payment required under the section. They found that the legislative history reflected that the phrase required the promised payment under the plan to be

---

[3] 7 COLLIER ON BANKRUPTCY ¶ 1129.03[9][c][i] at 1129-60 to -61 (Lawrence P. King, et al., eds., 15th ed. 1997) (citations omitted).

[4] 818 F.2d 1503 (9th Cir. 1987).

[5] 709 F.2d 647 (11th Cir. 1983), *cert. denied sub nom.*, **Southern States Motor Inns, Inc. v. United States**, 465 U.S. 1022 (1984).

4

discounted to present value as of the effective date of the plan.[6]  Citing COLLIER,

the Ninth Circuit explained the present value analysis thusly:

> The appropriate discount rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default.[7]

As the Eleventh Circuit noted, this approach is consistent with the history behind

the phrase and ensures that a creditor with a priority tax claim who is required to

accept installment payments remains in as good a position as if its claim had been

paid immediately.[8]

The **Southern States** and **Camino Real** courts held that the government, as

a creditor under 11 U.S.C. § 1129(a)(9)(C), was entitled to the present value of its

claim.   They further concluded that  several considerations militated against

adoption of the government's general interest rate for deferred taxes under 26

U.S.C. § 6621 as a proxy for the market rate in determining the present value of the

---

[6]**Camino Real**, 818 F.2d at 1505; **Southern States**, 709 F.2d at 650 (citing H.R.Rep. No. 595, 95th Cong. 1st Sess. 408, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6364; and 124 Cong. Rec. 32,406, 34,006 (1978)).

[7]**Camino Real**, 818 F.2d at 1505 *(*citing 5 COLLIER ON BANKRUPTCY ¶1129.03[4][f][i] at 1129-65 (Lawrence P. King, et al., eds.,15th ed. 1987)).

[8]**Southern States**, 709 F.2d at 652.

5

government's claim. First, Congress did not designate that general interest rate as the proper interest rate under 11 U.S.C. § 1129(a)(9)(C).[9] Second, because of fluctuations in interest rates, the rate under 26 U.S.C. § 6621 may differ from the actual market rate and thus be disadvantageous to the government.[10] Third, the application of the rate under 26 U.S.C. § 6621 ignores the variations between the length of the payout period, the quality of the security, and the risk of subsequent default.[11] Fourth, the rate set by taxing statutes is inappropriate under 11 U.S.C. § 1129(a)(9)(C) because the statutes reflect the government's tax objectives.[12] These objectives are different from the government's bankruptcy objectives and often involve a punitive-element dimension unrelated to bankruptcy objectives.[13]

Applying these considerations to the case at bar, it is abundantly manifest that Mississippi's fixed 12% annual rate required by MISS. CODE ANN. § 27-7-53(3)

---

[9]**Id.**

[10]**Camino Real**, 818 F.2d at 1506; **Southern States**, 709 F.2d at 652.

[11]**Southern States**, 709 F.2d at 652.

[12]**Camino Real**, 818 F.2d at 1507.

[13]**Id.** The court noted that the interest rate on deferred taxes, although presently adjusted to the prevailing interest rates of the economy, have historically been higher than the prevailing market rates to encourage prompt payment of taxes. Such a policy is not consistent with Congress' intent that the interest rate of deferred taxes in bankruptcy reflect the prevailing rates in the commercial loan market.

is not the appropriate rate of interest for deferred taxes under 11 U.S.C. § 1129(a)(9)(C). Like the federal rate, this rate does not account for fluctuations in the market interest. It likewise does not take into account the length of the payout period, the quality of the security, and the risk of subsequent default. The Commission does not contend that a fixed rate is an appropriate proxy for the market rate of interest. Rather, the Commission urges us to adopt its fixed rate as the appropriate rate of interest under 11 U.S.C. § 1129(a)(9)(C), despite the legislative history behind the provision and the compelling logic of the holdings in **Southern States** and **Camino Real**. The Commission advances several different arguments in support of the adoption of the state interest rate, all of which we reject for the following reasons.

The Commission first maintains that the courts *à quo* used "flawed reasoning" in adopting the market rate of interest as the appropriate rate under 11 U.S.C. § 1129(a)(9)(C), and urges us to disregard this reasoning and to defer to the state taxing statutes. In support of its position, the Commission relies on several cases in which courts have adopted and applied the rate of interest set by the taxing authorities to provisions of the bankruptcy code.[14] None of the cases cited,

---

[14]**In re Garcia**, 955 F.2d 16 (5th Cir. 1992); **United States v. Noland**, 517 U.S. 535 (1996); **Bruning v. United States**, 376 U.S. 358 (1964); and **In re Al Copeland Enterprises., Inc.**, 991 F.2d 233 (5th Cir. 1993).

however, addresses the proper rate of interest under 11 U.S.C. § 1129(a)(9)(C).[15]

The cases cited by the Commission are not dispositive, nor do they provide a

convincing rationale for departing from the accepted interpretation of this statute.

The Commission further attempts to distinguish **Camino Real** and **Southern**

**States** from the instant case, contending that the court's concern in **Camino Real**

that the rate of interest for deferred federal taxes under 26 U.S.C. § 6621 might "lag

behind the true market rate"[16] is not present under the Mississippi rate. The

Commission argues that the Mississippi rate, unlike the federal interest rate which

fluctuates to track the market, is fixed at twelve percent, and thus there is no danger

that the Mississippi rate will constantly lag behind the market rate. The fixed

Mississippi rate can be either disadvantageous or advantageous to the Commission,

depending on the current market rate.

We find this argument unpersuasive. As our colleagues in the Ninth Circuit

concluded, 11 U.S.C. § 1129(a)(9)(C) applies to all deferred taxes, not just federal

---

[15]**In re Garcia** addressed the issue whether pre-petition interest on a tax liability in a Chapter 13 case was entitled to the same priority as the underlying tax; **Noland** addressed the interest rate on a post-petition claim for taxes; **Bruning** involved the interest rate of non-dischargeable taxes; and **Al Copeland, Inc.** involved the interest rate on sales taxes collected by the debtor which the debtor held in trust for the state.

[16]**Camino Real**, 818 F.2d at 1506.

taxes.[17] The concern is that the taxing statutes of any taxing entity – federal, state or local – may include a punitive element which reflects the tax objective of encouraging prompt payment of taxes, and which is inimical to the financial rehabilitation of the debtor.[18] Adoption of the market rate of interest under 11 U.S.C. § 1129(a)(9)(C) promotes the bankruptcy objectives of putting the creditor in the same position it would have occupied if it had been allowed to end the relationship at the point of bankruptcy,[19] and ensuring that there is no adverse treatment of the debtor. These objectives are unaffected by the identity of the taxing entity.

The Commission further urges us to adopt the reasoning in the Third Circuit decision of **Rankin v. DeSarno**.[20] In **Rankin**, the court found that the statutory interest rate for post-petition interest on a secured municipal tax liability under 11 U.S.C. § 1325(a)(5)(B)(ii) was analogous to the interest rate of a market loan, and

---

[17]**Id.** at 1507 n.2.

[18]**Id**. The Commission further contends that the district court erred in holding that the Mississippi rate is punitive in nature. A close review of the district court's decision reveals that the court merely reiterated the concern from **Camino Real** that state taxing statutes *may* include a punitive element and thus the market rate is appropriate under 11 U.S.C. § 1129(a)(9)(C). This contention is thus without merit.

[19]**Southern States**, 709 F.2d at 652-53.

[20]89 F.3d 1123 (3rd Cir. 1996), *cert. denied sub nom*. **DeSarno v. Allegheny County**, 519 U.S. 1108 (1997).

thus the taxing entity was entitled to the 12% interest rate established by Pennsylvania law.[21]  The **Rankin** court adopted the state interest rate out of a concern that a fluctuating market rate would create "case-by-case litigation and inconsistent results."[22]  The Commission points out that 11 U.S.C. § 1325(a)(5)(B)(ii) has been treated identically to 11 U.S.C. § 1129(a)(9)(C) by most courts,[23] and urges us to adopt the statutory interest rate in determining the present value of a claim under 11 U.S.C. § 1129(a)(9)(C).  Although it is true that these two provisions have been treated identically in some cases, we decline to adopt the **Rankin** court's rationale for our interpretation of the provision in question.  As the dissent in **Rankin** noted, many statutory interest rates were fixed at their current rate in the early 1980s and have not been modified despite a sharp drop in rates since that time.[24]  Thus, the concerns present in **Camino Real** and **Southern States** – that the rate of interest set by the taxing statutes contains a punitive element which is inimical to the aims of bankruptcy law – is especially relevant when the

---

[21]**Rankin**, 89 F.3d at 1129-30.

[22]**Id.** at 1130.

[23]**In re DeMaggio**, 175 B.R. 144 (Bankr. D.N.H. 1994); **In re Jordan**, 130 B.R. 185 (Bankr. N.J. 1991).

[24]**Rankin**, 89 F.3d at 1132 (Sarokin, J., dissenting).

interest rate has no relation to current economic conditions.[25] Further, unlike 11 U.S.C. 1325(a)(5)(B)(ii), the provisions of 11 U.S.C. § 1129(a)(9)(C) apply to *unsecured* claims and thus the creditors are at a higher risk of not receiving payment. Because the claim is unsecured, a case-by-case determination of the rate of interest the reorganizing debtor would have to pay to obtain a loan on equivalent terms in the open-market ensures that the creditor is compensated at an appropriate rate.[26]

Finally, the Commission contends that policy concerns militate in favor of the adoption of the statutory interest rate. Specifically, the Commission asserts that the present value of a tax claim cannot be determined according to the market rate because the state, unlike other creditors, cannot adjust the rate of interest depending on the credit risk of an individual taxpayer. Because the state ostensibly lacks all control over the nonpayment of a tax obligation, the Commission insists that the legislature should be able to compensate the state for the increased cost of

---

[25]**Id.**

[26]**Id.** at 1133 (citing **Camino Real**, 818 F.2d at 1508). In a similar vein, Judge Sarokin noted that because the claims in question were secured claims and the creditors were first in line to receive the amounts owed, it was not necessary to account for the particular characteristics of each debtor. He suggested that in the case of secured claims under 11 U.S.C. § 1325(a)(5)(B)(ii), the appropriate rate would be the prime rate of interest charged by commercial banks to prime commercial loan customers. This rate would compensate the creditor for its various costs, but because it tracked the market rate would not contain the punitive element inimical to the aims of the bankruptcy system.

administration. The legislative history, however, clearly reflects that the rate of interest on deferred taxes should be the rate of interest that the debtor would pay to borrow a similar amount on the commercial market.[27] It is thus the debtor's characteristics, *e.g.,* the quality of the debtor's security and the risk of default, that determine the interest rate under 11 U.S.C. § 1129(a)(9)(C); the fact that the debt is for taxes due to a taxing entity is irrelevant in determining the proper interest rate.[28] We have found no authority for the proposition that compensation of the taxing entity for administrative expenses was one of the policy considerations behind 11 U.S.C. § 1129(a)(9)(C), and we thus reject the Commission's suggestions with respect thereto.

We therefore conclude and hold that the proper rate of interest under 11 U.S.C. § 1129(a)(9)(C) is the current market rate equivalent to the rate the debtor would have to pay to borrow the same amount in the commercial loan market. In so holding, we recognize that the statutory rates may be relevant to, but not dispositive of, the bankruptcy court's determination of the current market rate under 11 U.S.C. § 1129(a)(9)(C). Because the Mississippi rate in question does not track the market rate or reflect the rate of interest that the debtor would pay on

---

[27]**Camino Real**, 818 F.2d at 1505-06.

[28]**Id.** at 1506.

12

similar terms in the commercial loan market, it is not relevant in the determination of the market rate of interest under 11 U.S.C. § 1129(a)(9)(C).

The judgment appealed is AFFIRMED.