**In re Helen Urshula SWAFFORD, Debtor.**

**AmeriCredit Financial Services, Inc., Movant,**

v.

**Helen Urshula Swafford, Respondent.**

**No. G02–20701–REB.**

United States Bankruptcy Court, N.D. Georgia, Gainesville Division.

Nov. 8, 2002.

Craig B. Lefkoff, Lefkoff & Rubins, P.C., Atlanta, GA, for Movants.

E.L. Clark, Clark & Washington, P.C., Atlanta, GA, for Respondent.

### ORDER DEFERRING MOVANT'S OBJECTION TO CONFIRMATION OF DEBTOR'S AMENDED PLAN AND ORDER AND NOTICE OF HEARING ON OBJECTION TO CONFIRMATION

ROBERT E. BRIZENDINE,
Bankruptcy Judge.

This matter is before the Court on the objection of Movant AmeriCredit Financial Services, Inc. to confirmation of Debtor's Chapter 13 plan as amended. Specifically, objection is made to the provision whereby Debtor proposes to pay interest on Movant's secured claim "at the rate of 12% on the value of the collateral securing the claim. . . ." Movant filed a proof of claim in the amount of $11,163.80. The value of the automobile serving as collateral has been determined to be $11,900.00 and the contract rate of interest is 23.5% (APR). Movant objects to the proposed treatment of its claim on grounds that it is entitled by law to the contract rate of interest to preserve the value of its claim in accordance with 11 U.S.C. § 1325(a)(5)(B)(ii).

Movant contends that because it cannot immediately realize the value of its collateral due to the bankruptcy filing and automatic stay, and since the collateral is not being surrendered under subsection 1325(a)(5), it is protected by the Bankruptcy Code through the Debtor's distribution of property with a value of not less than $11,163.80. In support of this assertion, Movant cites the following statutory language:

. . . with respect to each allowed secured claim provided for by the plan-. . . (B)(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

11 U.S.C. § 1325(a)(5)(B)(ii). Movant argues it is being forced to extend credit under a defaulted loan and any rate of interest other than the original contract rate would be arbitrary and constitute the deprivation of the value of its bargained for property interest to which it is entitled on its allowed claim. *See In re Cooper*, 11 B.R. 391 (Bankr.N.D.Ga.1981). If modified, Movant states that the rate of return for such a coerced loan must correspond with the rate Movant would charge to a third party outside bankruptcy with comparable risk and loan terms.

Debtor counters this argument stating, pursuant to the authority of *In the Matter of Southern States Motor Inns, Inc.*, 709 F.2d 647 (11th Cir.1983), *cert. denied*, 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984), that the "market rate of interest" controls in this case and any determination of same must be guided by the factors set forth in *Southern States*.[1] Attempting to follow *Southern States*, some courts have used the coerced loan approach to define the market rate of interest. *See In re Chiodo*, 261 B.R. 499 (Bankr.M.D.Fla.2000) and *In re Howard*, 212 B.R. 864 (Bankr. E.D.Tenn.1997). Debtor, however, adopts the criticism set forth in several other cases and argues that the coerced loan theory is based upon a non-realistic conception of market and allows for profit over and above present value. *See e.g. In re Oaks Partners, Ltd.*, 135 B.R. 440 (Bankr.N.D.Ga.1991).[2] Additionally, Debtor states that the contract rate as applied under this theory does not reflect the required market rate as it often results from what an unsophisticated debtor has accepted as opposed to what is truly available in the market. To arrive at the appropriate market rate, Debtor urges the Court to adopt the formula method (described hereafter) to avoid overcompensating Movant while accounting for risk factors and paying sufficient interest to compensate Movant for the time-value of money.[3]

Based upon a review of the law, the Court concludes as follows. As held in *Southern States*, the holder of a secured claim, who is required under a confirmed plan to accept payment on its claim over time, must receive a rate of interest that compensates the creditor for the present value of its claim. 709 F.2d at 650, 652–53. In determining the proper interest rate, the Eleventh Circuit requires consideration of "the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default." 709 F.2d at 652, quoting 5 Collier ¶ 1129.03, at 1129–65. As argued by Debtor, some courts have concluded that the "time value of money approach" or "formula approach" best enable the court to determine the proper market rate consistent with *Southern States*. *See Matter of IPC Atlanta Ltd. Partnership*, 142 B.R. 547, 557 (Bankr.N.D.Ga.1992); *Oaks Partners*, 135 B.R. 440, 445. Under this method, a risk-free interest rate, such as the yield on a treasury obligation of like term, plus an additional amount to account for the risk factors referenced in *Southern States* results in an appropriate rate.

By contrast under the "coerced loan" theory urged by Movant, courts determine the market rate in reference to what another lender in the market would charge if it made a similar loan. In addition, under this theory the original contract rate is

---

1. These factors include length of time for payout, quality of the security, and risk of subsequent default, 709 F.2d at 651, quoting Collier on Bankruptcy ¶ 1129.03, at 1129–65 (15th ed.1982). In *Southern States*, the Eleventh Circuit considered a priority tax claim in a Chapter 11 case but its rationale is generally recognized as important in construing 11 U.S.C. § 1325(a)(5)(B) in cases under Chapter 13. 709 F.2d at 652 n. 6; *see also Evabank v. Baxter*, 278 B.R. 867, 880 n. 6 (N.D.Ala.2002).

2. Acknowledging the divergence in the case law, the court in *Baxter* concluded that the Eleventh Circuit adopted the coerced loan approach in *Southern States* citing language in the opinion that the applicable current market rate should not reflect any discount for the " 'rehabilitation aspects' of the bankruptcy plan." 278 B.R. at 880–83, citing 709 F.2d at 653.

3. Debtor also contends that the legal rate of interest under state law is too inflexible in terms of changing market realities.

considered some evidence of what would be required on a loan of similar character and duration. *Baxter,* 278 B.R. at 881; *In re Pledger,* 275 B.R. 394 (Bankr.N.D.Ala. 2002). As suggested by Debtor, the most compelling criticism against this approach is the nonexistence of an actual market for such a loan to a debtor in bankruptcy. *American General Fin., Inc. v. Kleinknecht,* 230 B.R. 207, 210 (M.D.Ga.1999). Other criticisms favoring a discounted rate include the lower monitoring costs and risk of default for a debtor in a Chapter 13 bankruptcy case who presumably has more incentive to pay. Also, a creditor making a new loan would have to account for loan and transaction costs which would be reduced in a bankruptcy situation.

■ The legal standard set forth in Section 1325(a)(5)(B)(ii) states that "the court shall confirm a plan if" it provides to the holder of a secured claim "the value, as of the effective date of the plan . . . not less than the allowed amount of such claim." Simply stated, the Court is required to set a value and determine an interest rate that will reasonably ensure a creditor will receive such value accounting for the financial situation of the debtor and assessment of the risk of nonpayment.

Even after *Southern States,* the case law in this circuit is at best inconclusive regarding the method which should be used in determining the prevailing market rate of interest consistent with the *Southern States* criteria. In this Court's view, however, such a divergence of opinion is not an issue because it is not necessary to choose one approach over the other. The requirement in this circuit is to set an interest rate as guided by the factors expressed in *Southern States* based upon the evidence presented. Even though the coerced loan approach may be criticized for its reliance on a non-existent market, a similar charge of lack of objectivity can be made against the formula approach which also calls for the use of discretion. As the court in *Kleinknecht* concluded, either way the court is engaging in an informed estimation which is appropriate if consistently guided by all relevant factors. 230 B.R. at 212.

■ Given the lack of agreement or any real need to select a definitive approach, the only decision to be made, in addition to the value of the collateral, is the rate of interest that will provide the creditor with the equivalent present value of its allowed claim as paid over time. The creditor is to be compensated for the risks associated with the anticipated payments under a plan through consideration of the length of time for payout, the quality of the security, and the risk of subsequent default. Moreover, the Court believes this determination would be further assisted by testimony regarding additional factors such as the debtor's work history, job stability, cash flow, disposable income, existence of repeat bankruptcy filings, nature of Debtor's unsecured debts, and plan contents, as well as current interest rates (cost of funds) and the original contract rate.[4]

4. In this Court's view, the actual, historical relationship between the parties, including the contract rate of interest, should inform and assist in any analysis of risk. The circumstances surrounding the negotiation of the loan contract could reveal a relative lack of sophistication and inexperience of the debtor. The fact that the debtor filed bankruptcy, however, lends some support to the idea that the premium was an accurate reflection of the risk of default. Perhaps the relevance of the contract rate has been unduly subordinated to the effort to ascertain the proper market. It is worth remembering that *Southern States* addressed an involuntary tax claim. There was no contract rate in that case which may account for its lack of emphasis in subsequent cases construing the requirements of *Southern States.*

■ In sum, no matter which theory is used or whether a theory is even used at all, in the end the Court must make an interest rate determination based upon an analysis of the non-exclusive list of factors set forth above and any others as may be appropriate. For these reasons, this Court concludes that an evidentiary hearing is necessary for such consideration.

Based upon the foregoing, it is

**ORDERED** that Movant's objection to the Debtor's plan as amended be, and hereby is, **deferred** pending an evidentiary hearing. It is

**FURTHER ORDERED AND NOTICE IS HEREBY GIVEN** that a hearing will be held before the Court at 1:30 o'clock p.m. on the 14th day of November, 2002, in Courtroom *103*, **United States Courthouse, 121 Spring Street,** *Gainesville, Georgia,* to consider evidence regarding any and all factors necessary to make a determination of the appropriate rate of interest to be paid on Movant's claim under Debtor's amended Chapter 13 plan.

The Clerk is directed to serve a copy of this Order and Order and Notice of Hearing upon Debtor, her counsel, counsel for AmeriCredit Financial Services, Inc., and the Chapter 13 Trustee.

**IT IS SO ORDERED.**