**In re CHIODO, Matthew J., Debtor.**

**No. 99–09007–6J3.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Nov. 30, 2000.

---

**500**

Michael A. Paasch, Mateer, Harbert & Bates, P.A., Orlando, FL, for debtor.

Laurie K. Weatherford, Winter Park, FL, Chapter 13 Trustee.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW ON THE VERIFIED MOTION BY THE DEBTOR TO VALUE CLAIM OF TIDEWATER MOTOR CREDIT*

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on August 22, 2000, on the Amended Verified Motion by Debtor to Value Claim of Tidewater Motor Credit ("Tidewater") and for Judicial Notice (Doc. No. 60) and the Response by Tidewater to the Debtor's Motion to Value (Doc. No. 69). The debtor, Matthew J. Chiodo ("Chiodo"), seeks to value a 1998 Honda Civic that is encumbered by Tidewater's security interest. The parties agreed at the hearing that the car has a value of $11,720. However, the parties disagree on two issues.

First, Tidewater contends that, after the car was repossessed before this Chapter 13 case was filed, Chiodo retained only very limited rights to redeem the car pursuant to the arguments made by Tidewater in its prior Motion for Relief From Stay (Doc. No. 5). Pursuant to the Findings of Fact and Conclusions of Law previously entered on the Motion for Relief From Stay and the related Order (Doc. Nos. 36 and 37), this Court previously found that Chiodo has broader ownership interests in the car beyond that of mere redemption rights. Further, the Court found that Tidewater did not own the vehicle on the date that Mr. Chiodo filed this Chapter 13 case.

Tidewater appealed this ruling; the appeal on these issues is pending. The Court's current determination of valuation in connection with the confirmation of Chiodo's Chapter 13 plan does not in any way attempt to alter or affect the issues raised in the pending appeal. Rather, the Court will treat its prior ruling on Tidewater's Motion for Relief From the Automatic Stay as the law of this case subject to modification and review by the appellate courts. Accordingly, this Court again holds that Chiodo has broader ownership interests in the car beyond mere redemption rights subject to a final resolution of this issue in the pending appeal. Chiodo is able to pay Tidewater's allowed secured claim over time and with interest pursuant to § 1325(a)(5)(B) of the Bankruptcy Code.[1]

The second issue in dispute between the parties is the applicable market rate of

---

1. Unless otherwise stated, all references to the Bankruptcy Code refer to Title 11 of the United States Code.

interest to use in paying Tidewater's allowed claim under Section § 1325(a)(5). As to this issue, the parties agree that, pursuant to the Eleventh Circuit decision of *In re Southern States Motor Inns, Inc.,* 709 F.2d 647, 650 (11th Cir., 1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984), Chiodo must pay a market rate of interest on Tidewater's allowed secured claim of $11,720. The parties disagree on the applicable method used to determine market interest rate.

The parties further have stipulated to the following facts:

1. Chiodo and Scott Clark Toyota are parties to a Simple Interest Motor Vehicle Contract and Security Agreement dated May 21, 1999, in which Chiodo purchased a used 1998 Honda Civic two door sedan, VIN 1HGEJ8142WL012341 (the "Honda") and promised to pay the unpaid purchase price (the "Contract"). In the Contract, Chiodo pledged the Honda to secure payment of the unpaid purchase price for the Honda.

2. Tidewater purchased the Contract from Clark Scott Toyota without recourse, and is the assignee of the Contract. Tidewater perfected a security interest in the Honda by noting its lien on the title to the Honda.

3. Chiodo defaulted under the Contract, and Tidewater took possession of the Honda on October 14, 1999.

4. Chiodo filed this Chapter 13 case on October 29, 1999 (the "Filing Date").

5. Tidewater had the Honda in its possession on the Filing Date.

6. Tidewater turned over the Honda to Chiodo after the Filing Date.

7. Tidewater turned over the Honda to Chiodo after the Filing Date, and Chiodo has had the use of the Honda during the administration of this case.

8. The accelerated unpaid balance under the Contract on the Filing Date and the amount required to redeem the Honda on that date was $16,205.93.

9. Chiodo filed a Chapter 13 Plan dated November 15, 1999 (the "November Plan").

10. On January 18, 2000, Tidewater accepted the $13,135 value stated for the Honda in the November Plan. [At the hearing, Tidewater accepted Chiodo's value for the Honda—$11,720.]

11. Tidewater received from the Standing Chapter 13 trustee in this case the sum of $1,465 during the administration of this case as adequate protection of its interest in the Honda.

12. Chiodo filed a Modified Chapter 13 Plan dated August 22, 2000, which valued the Honda and Tidewater's allowed secured claim at $11,720 as of the effective date of the Plan, and it provides Tidewater with interest on that allowed secured claim at 12% per annum.

13. The amount that Chiodo would have had to pay Tidewater to redeem the Honda on the Filing Date was $16,794, but no Chapter 13 plan in this case will pay Tidewater the principal sum of $16,794 plus any interest thereon from the effective date of a plan.

14. Tidewater does not make direct loans to consumers. Tidewater is licensed only to purchase retail installment sales contracts, like the Contract, from vendors of goods.

15. As of August 22, 2000, Tidewater purchases retail installment sales contracts, like the Contract, from vendors of automobiles in the Middle District of Florida with the following rates of return: (a) 16.96% per annum on new vehicles; (b) 18.5% per annum on vehicles that are no more than two years old at the time of

sale; and (c) 23% per annum on vehicles three or more years old at the time of sale. The contract rate is 18.5%.

In addition, Chiodo submitted an exhibit, Debtor's Exhibit No. 2, that lists applicable interest rates on various financial market indexes. On August 21, 2000, the day preceding the hearing, the applicable interest rate for one-year treasury notes guaranteed by the United States government was 6.12%. On November 1, 2000, the interest rate for five-year treasury bills (which equals the length of Chiodo's proposed Chapter 13 plan payments) was 6.750%.

Based on these stipulated facts and the parties agreement that the Honda has a value of $11,720, the only remaining issue is whether the market rate of post-confirmation interest on a secured claim in a Chapter 13 case is the underlying contract rate or some other, generally lesser, rate. Tidewater argues it is entitled to post-confirmation interest at the contract rate, 18.5%. Chiodo offers 12% interest and argues that this rate properly pays the present value of the Honda and protects Tidewater from risk of loss.

■ Section § 1325(a)(5)(B) of the Bankruptcy Code requires Chiodo to do two things. First, he must allow Tidewater to retain its lien on the Honda. Second, Chiodo must pay "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii). Under this chapter 13 "cram-down" requirement, secured creditors, who are required to accept deferred payments of their allowed claims, are guaranteed the right to receive the present value equivalent of their claim. *In re Southern States Motor Inns, Inc.*, 709 F.2d 647, 650 (11th Cir.1983), *cert. denied,* 465 U.S. 1022, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984). Essentially, by receiving interest and the assumed present value of their claim, secured creditors are placed in the same position as if they were paid in full on the confirmation date. *In re Valenti,* 105 F.3d 55, 63 (2nd Cir.1997). The tricky part is determining the appropriate interest rate to use to insure secured creditors obtain the present value of their claims.

■ Two divergent theories prevail. The majority of courts have adopted the "coerced loan" approach.[2] A small but

---

**2.** *In re Haskell,* 252 B.R. 236 (Bankr.M.D.Fla. 2000) (applying coerced loan approach in Chapter 13 case where there was evidence that no lender would extend a loan to debtor for less than the 18% statutory interest rate for delinquent real estate taxes); *In re New Midland Plaza Assoc.,* 247 B.R. 877 (Bankr. S.D.Fla.2000) (adopting coerced loan approach in the context of a Chapter 11 reorganization case); *In re Star Trust,* 237 B.R. 827 (Bankr.M.D.Fla.1999) (courts should attempt to place the secured creditor in as good a position as it would have been had the present value of its claim been paid immediately); *In re Lambert,* 194 F.3d 679, 684 (5th Cir. 1999) (proper rate of interest on deferred state taxes is current market rate equivalent to the rate the debtor would have to pay to borrow the same amount in the commercial loan market). *In re Felipe,* 229 B.R. 489 (Bankr.S.D.Fla.1998) (adopting the coerced loan approach and requiring current market rate of interest in Chapter 13 cases to be determined through evidentiary hearings); *In re Oglesby,* 221 B.R. 515 (Bankr.D.Colo.1998) (accepting the coerced loan approach as bound by *Hardzog,* using rate charged for a similar loan under similar circumstances; alternatively, looking to contract rate at time of confirmation); *In re Segura,* 218 B.R. 166 (Bankr.N.D.Okla.1998) (reluctantly adopting the coerced loan approach in deference to the Tenth Circuit's decision in *Hardzog,* but preferring the Second Circuit's approach in *Valenti); Green Tree Fin. Serv. Corp. v. Smithwick,* 121 F.3d 211 (5th Cir.1997) *cert. denied* 523 U.S. 1074, 118 S.Ct. 1516, 140 L.Ed.2d 669 (1998) (endorsing the rebuttable presumption approach of the Third Circuit in *GMAC v. Jones,* and adopting the coerced

growing minority of courts have relied on the "formula loan" approach.[3]

Judge Killian, in the recent decision of *In re Hollinger*, 245 B.R. 691 (Bankr. N.D.Fla.2000), compares these two approaches and concludes that the formula loan method "is the better approach because it uses an objective interest rate with risk points added for risks associated with a particular case. Thus, creditors are not overcompensated, the debtor is not overburdened, the rate is easy to determine, and the factors laid out by the Eleventh Circuit in *Southern States* are considered." 245 B.R. at 695. For the reasons stated most eloquently by Judge Killian, this Court accepts the analysis and conclusion on the *Hollinger* decision in full. The formula loan approach is adopted in this case.

■ Here, Chiodo has proposed a Chapter 13 plan that would pay Tidewater's full allowed claim of $11,720 together with interest at 12% over five years. The inter-

---

loan method); *In re Smith*, 192 B.R. 563 (Bankr.W.D.Okla.1996) (adopting analysis and procedure of Third Circuit in *GMAC v. Jones* as consistent with *Hardzog*); *GMAC v. Jones*, 999 F.2d 63 (3d Cir.1993) (presumptive cramdown interest rate under 1325(a)(5)(B)(ii) is that which the secured creditor would charge, at the effective date of the plan, for a similar loan under similar circumstances; either party may rebut presumption); *United Carolina Bank v. Hall*, 993 F.2d 1126, 1131 (4th Cir.1993) (specifically rejecting cost of funds approach, adopting a rule that looks to the secured creditor's lending market to determine interest rate, taking into account the rates the creditor obtains in similar loans as well as the creditor's expenses in obtaining those loans); *In re Mellema*, 124 B.R. 103 (Bankr.D.Colo.1991) (following *Hardzog*); *In re Hardzog*, 901 F.2d 858 (10th Cir.1990) (adopting coerced loan approach for determining current market rate of interest in Chapter 12 cases); *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 431 (6th Cir.1982) (in the absence of special circumstances bankruptcy courts should use the current market rate of interest used for similar loans in the region).

3. *In re Hollinger*, 245 B.R. 691, 696 (Bankr. N.D.Fla.2000) (applying the formula method because "creditors are not overcompensated, the debtor is not over burdened, the rate is easy to determine, and the factors laid out by the Eleventh Circuit in *Southern States* are considered."); *American General Finance, Inc. v. Kleinknecht*, 230 B.R. 207, 212 (M.D.Ga.1999) (either formula method or coerced loan method approach is appropriate "so long as the bankruptcy court gives appropriate consideration to all relevant factors.");

*In re Marfin Ready Mix Corp.*, 220 B.R. 148, 164 (Bankr.E.D.N.Y.1998) (applying current rate on a U.S. Treasury instrument plus a risk premium of from one to three percent); *In re Milham*, 141 F.3d 420, 424 (2d Cir.1998) (restating holding of *In re Valenti*); *In re St. Cloud*, 209 B.R. 801, 807 (Bankr.D.Mass. 1997) (finding the coerced loan approach "unfairly enhances position of lender by including a profit component," and applying instead a risk free rate to which a risk premium is added); *In re Valenti*, 105 F.3d 55, 64 (2d Cir.1997) (*citing In re Smith*, 178 B.R. 946, 951 (Bankr.D.Vt.1995) (distinguishing a creditor's "claim" under § 1325(a)(5)(B)(ii), which includes a statutory obligation to pay interest, from a loan, which "includes a contractual obligation to pay interest"); *In re Hudock*, 124 B.R. 532, 534 (Bankr.N.D.Ill. 1991) ("[T]he Bankruptcy Code protects the creditor's interest in the property, not the creditor's interest in the profit it had hoped to make on the loan.")); *In re Koopmans v. Farm Credit Services*, 102 F.3d 874 (7th Cir. 1996) (applying the prime rate of interest plus a risk premium in a Chapter 12 case, but not mandating the formula method); *In re Fowler*, 903 F.2d 694, 698 (9th Cir.1990) (the bankruptcy court did not err in using the formula approach to determine cramdown interest rate in Chapter 12 case, but case would be remanded to bankruptcy court for findings supporting its use of .75 percent risk factor); *United States v. Doud*, 869 F.2d 1144, 1145 (8th Cir.1989) (applying, but not specifically mandating the formula method in a chapter 12 case); *In re Camino Real Landscape Maint. Contractors, Inc.*, 818 F.2d 1503, 1508 (9th Cir.1987) (adopting the formula method in a Chapter 11 case).

est rate on five-year treasury bills, as of November 1, 2000, was 6.750%. Using this rate as a starting point and assuming that the rate reflects inflationary expectation and expected interest, the only remaining issue is to what extent a risk premium is warranted in this case based on Chiodo's circumstances, his credit history, and the feasibility of his Chapter 13 plan.

Given the facts of this case, a risk premium is absolutely warranted. Chiodo purchased the Honda in May, 1999. He failed to make payments almost immediately. Tidewater repossessed the car on October 14, 1999. Chiodo filed this Chapter 13 case two weeks later. During the course of this Chapter 13 case, Chiodo has made the required payments, although some payments were not made on time. As of October 31, 2000, Chiodo was current on all payments due under his plan. He appears to have the financial ability to make all future payments. In assessing the risk premium to assign, Chiodo has exhibited past problems in making timely payments. A high-risk premium of 5% is appropriate to address the possibility that he may encounter future financial downturns. The high-risk premium also protects Tidewater from any loss due to the depreciating value of the car in the event Chiodo fails to make his Chapter 13 payments. Therefore, Chiodo must pay an interest rate of at least 11.750% on Tidewater's allowed secured claim.

Chiodo proposes to pay an interest rate of 12% per annum, which complies with the requirements of Section 1325(a)(5)(B)(ii) of the Bankruptcy Code. The Motion to Value (Doc. No. 60) shall be granted assessing the value of the Honda at $11,720 and directing Chiodo to pay a market rate of interest of at least 11.750%.

A separate order consistent with this opinion shall be entered.