**In the Matter of Sunny M. BAXTER, Debtor.**

**No. 01–82345–JAC–13.**

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

Nov. 8, 2001.

John Larsen, Bond, Botes, Sykstus & Larsen, Huntsville, AL, for debtor.

John Lavette, Morris and Lavette, P.C., North Birmingham, AL, for creditor.

Phillip Geddes, Decatur, AL, trustee.

## MEMORANDUM OPINION

JACK CADDELL, Bankruptcy Judge.

This case is before the Court for a determination of value on a 1996 Dodge Stratus, the collateral on a debt to EvaBank, and to establish an interest rate for repayment of same under the debtor's Chapter 13 plan.[1] The Court received evidence on the issue of value from both parties and the Court found the value to be in the amount of $6,300.00. No evidence was presented by either side as to what the appropriate interest rate should be. Both sides expressed in open Court that they were satisfied over the Court's valuation finding, but the debtor sought to pay the claim with the plan rate of 9%, and the creditor sought to put the claim into the plan at its contract rate of interest, 12.9%. The parties asked the Court to take the matter under advisement and to set an appropriate interest rate.

## I. FINDINGS OF FACT

At the outset the Court notes that the Bank's claim amount (net due on note) is 6,326.34 and the Court's value is $6,300.00, hence, although very slight, the claim is considered undersecured.[2]

On December 30, 1998, the debtor purchased a 1996 Dodge Stratus from Lynn Layton Chevrolet for $12,207.98. The debtor made a down payment of $2,482.98 and EvaBank financed the balance. The terms of the note and security agreement included a 54 month pay-back period with monthly payments of $239.60 and a 12.9% annual percentage rate. The first monthly installment payment was due February 13, 1999. EvaBank retained a lien on the car and perfected its rights, title and interest in same by having its status as the first lien holder noted on the certificate of title.

## II. CRAM DOWN INTEREST RATE

The value of EvaBank's claim having already been fixed, the only remaining issue before the Court concerns the proper method for determining the rate of interest to be applied in calculating the present

---

1. The Court refers to setting the interest rate, but the precise language under the applicable code section, § 1325(a)(5)(B)(ii), is "the value, as of the effective date of the plan." For simplicity sake the Court will refer to same as interest rate throughout this opinion.

2. A creditor is undersecured when the value of the collateral securing the creditor's claim is less than the claim amount. When the value of the collateral equals the claim amount, a creditor is considered to be fully secured. If the value of the collateral exceeds the claim amount, a creditor is oversecured. *See In re Ehrhardt*, 240 B.R. 1 (Bankr. W.D.Mo.1999) (Koger, J.).

value of EvaBank's secured claim under 11 U.S.C. § 1325(a)(5)(B)(ii). The debtor has offered to pay 9% on the secured portion of the bank's claim, but EvaBank contends that it is entitled to receive its contract rate of 12.9%.

Section 1325(a)(5)(B) of the Bankruptcy Code allows a Chapter 13 debtor to retain and use a secured creditor's collateral, over the creditor's objection, provided that the present value, as of the effective date of the plan, of the property to be distributed under the plan is not less than the allowed amount of such claim.[3] In theory, present value interest payments place the creditor in the same economic position that it would have been had it received the value of its allowed claim immediately.[4] Thus, if the Chapter 13 plan proposes to pay the value of the secured claim in installments over the life of the plan, the secured creditor must receive interest at a rate that will put the creditor in the same economic position that it would have been had the debtor paid the claim immediately or surrendered the collateral.[5] Otherwise, the creditor will receive less than what it is entitled to due to the simple fact that a dollar today is worth more than a dollar tomorrow.[6]

The parties agree that secured creditors in this circuit who are to receive installment payments are entitled to receive interest on their claims at the prevailing market rate pursuant to the Eleventh Circuit case of *In re Southern States Motor Inns., Inc.*, 709 F.2d 647 (11th Cir. 1983), but the parties disagree on the proper method for determining the market rate under *Southern States.* In *Southern States* the Eleventh Circuit determined that the "prevailing market rate" of interest should be used under 11 U.S.C. § 1129(a)(9)(C) in a Chapter 11 cramdown.[7] According to the Eleventh Circuit:

> The appropriate discount [interest] rate must be determined on the basis of the rate of interest which is reasonable in light of the risks involved. Thus, in determining the discount [interest] rate, the court must consider the prevailing market rate for a loan of a term equal to the payout period, with due consideration of the quality of the security and the risk of subsequent default.[8]

Although *Southern States* was decided under the Chapter 11 cramdown provision, courts have followed the decision in Chapter 13 and Chapter 12 cases because the cramdown provisions under the various chapters contain the same phrase "value,

---

**3.** Section 1325(a)(5)(B) of the Bankruptcy Code provides:
  (a) Except as provided in subsection (b), the court shall confirm a plan if—
    (5) with respect to each allowed secured claim provided for by the plan—
  (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
  (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim[.]

**4.** *In re Hollinger*, 245 B.R. 691 (citing *In re Valenti*, 105 F.3d 55, 63 (2nd Cir.1997)); *In re Chiodo*, 261 B.R. 499, 501 (Bankr.M.D.Fla. 2000).

**5.** *In re Ehrhardt*, 240 B.R. 1 (Bankr.W.D.Mo. 1999) (Koger, J.).

**6.** *In re Richards*, 243 B.R. 15, 21 (Bankr. N.D.Ohio 1999).

**7.** The cramdown provisions in Chapters 11, 12, and 13, are essentially the same. Under each the debtor is required to provide a secured creditor with the present value, as of the effective date of the plan, of its claim. *See In re Corley,* 83 B.R. 848, 850 (Bankr.S.D.Ga. 1988).

**8.** *In re Southern States Motor Inns., Inc.*, 709 F.2d 647, 650 (11th Cir.1983).

as of the effective date of the plan,"[9] but the courts have disagreed on the proper method for determining the prevailing market rate and two predominate theories have emerged: (1) formula method; and (2) coerced loan method.

■ Although a majority of the courts have adopted the "coerced loan" method, a growing minority of courts have followed the "formula" method.[10] Under the coerced loan method the "court must look to the interest rates charged by the creditor making a loan to a third party with similar terms, duration, collateral, and risk."[11] EvaBank contends that the Eleventh Circuit adopted the coerced loan method in *Southern States* and that the contract rate will usually reflect the market rate for a similar loan under this method. The coerced loan method is a creditor based approach to determining present value, but nothing in the Bankruptcy Code suggests that "value, as of the effective date of the plan" is creditor specific. If Congress had intended for secured creditors to receive their contract rate of interest, Congress could have simply used the term contract rate. Instead, Congress mandated that creditors receive the present value of their claim as of the effective date of the plan.

In the case of *In re Hollinger*, 245 B.R. 691 (Bankr.N.D.Fla.2000),[12] the Honorable Lewis Killian found that the formula method best ensures that creditors receive the present value of their claims as of the effective date of the plan. As Judge Killian explained:

"Based on the analysis of caselaw, the formula method is the better approach because it uses an objective interest rate with risk points added for risks associated with a particular case. Thus, creditors are not overcompensated, the debtor is not overburdened, the rate is easy to determine, and the factors laid out by the Eleventh Circuit in *Southern States* are considered."[13]

Under the formula method a riskless cost of money is established by using the sale of treasury bills and adding risk points to reflect such factors as the "term, quality of security, and risk of repayment" to account for the factors laid out in *Southern States.*[14]

*Hollinger* criticized the coerced loan method for including the creditor's profit as part of the market rate of interest and for overcompensating creditors at the expense of the debtor's estate. By protecting the creditor's interest in the loan, the coerced loan method actually gives the

---

**9.** *See In re Hollinger*, 245 B.R. 691 (Bankr. N.D.Fla.2000) (Chapter 13); *In re Chiodo*, 261 B.R. 499 (Bankr.M.D.Fla.2000); *In re Senior*, 255 B.R. 794 (Bankr.M.D.Fla.2000) (Chapter 13); and *In re LLL Farms*, 111 B.R. 1016 (Bankr.M.D.Ga.1990) (Chapter 12).

**10.** *In re Chiodo*, 261 B.R. 499, 501 (Bankr. M.D.Fla.2000) (see citations in footnotes 2 and 3).

**11.** *In re Felipe*, 229 B.R. 489, 492 (Bankr. S.D.Fla.1998).

**12.** *Hollinger* was vacated on other grounds by the Eleventh Circuit. While the case was pending on appeal before the United States District Court for the Northern District of Florida, the underlying bankruptcy case was

dismissed and the district court dismissed the appeal as moot. The creditor appealed the dismissal on the ground that the decision was due to be vacated. The Eleventh Circuit held that when a case becomes moot while on appeal, the appellate court should dismiss the appeal and vacate the judgment below to clear the path for future relitigation of the issues between the parties.

**13.** *Id.* at 695; *See also In re Chiodo*, 261 B.R. 499, 503 (Bankr.M.D.Fla.2000) (adopting Judge Killian's analysis).

**14.** *In re Hollinger*, 245 B.R. 691, 694 (Bankr. N.D.Fla.2000) (quoting Collier).

creditor more than the present value of its allowed claim.[15] This court adopts Judge Killian's analysis and reasoning in full.

■ Applying the formula method to the claim in *Hollinger*, Judge Killian concluded that an appropriate risk premium for used vehicles should be three to five percent depending on the circumstances of the particular case.[16] The applicable five-year treasury bill rate was 6.126%. Thus, the present value range was 9.126% to 11.126%. The debtor proposed to pay 10% which fell within this range and satisfied the present value requirement under § 1325(a)(5)(B)(ii).

The Court takes judicial notice that the five-year treasury bill rate was 4.83%[17] when the debtor's plan was confirmed on July 11, 2001.[18] Thus, using a three to five percent risk premium the present value range for EvaBank's claim is 7.83% to

9.83%. Although the Court recognizes that a three to five percent risk premium may not be appropriate in all cases involving used cars, the Court believes that it is appropriate here in light of the risks involved in this case.[19] Under the terms of the original note and security agreement, the 1996 Dodge Stratus was scheduled to payoff in July of 2003. Under the terms of the debtor's plan the payoff will be stretched out approximately two years. Applying a 9.83% interest rate and $6,300.00 value the claim will be paid off in approximately May of 2005 at which time the car will be 9 years old. If the debtor is unable to complete his plan payments, EvaBank may find itself in a worse position upon default than the position it held on the effective date of the plan. The Court believes that a five percent risk premium will ensure that EvaBank re-

---

**15.** *Id.* at 695.

**16.** *Id.* at 697.

**17.** Fed. Reserve Statistical Release, *available at* http://federalreserve.gov/releases/H15/data/wf/tem5y.txt. *See IRS v. CM Holdings, Inc.*, 254 B.R. 578, 630 n. 63 (D.Del. 2000) (citing the Eleventh Circuit case of *Citizens & Southern Corp. v. Comm'r*, 91 T.C. 463, 503–04, 1988 WL 90987 (1988), *aff'd*, 919 F.2d 1492 (11th Cir.1990) for the proposition that the Treasury Bond rate is a fact subject to judicial notice). Rule 201. Judicial Notice of Adjudicative Facts provides in part:
  (a) Scope of rule. This rule governs only judicial notice of adjudicative facts.
  (b) Kinds of Facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
  (c) When discretionary. A court may take judicial notice *whether requested or not.*
  (d) When mandatory. A court shall take judicial notice if requested by a party and supplied with the necessary information.
  (e) Opportunity to be heard. A party is entitled upon timely request to an opportu-

nity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification the request may be made after judicial notice has been taken.
  (f) Time of taking notice. *Judicial notice may be taken at any stage of the proceeding.* Emphasis added.

**18.** In this division, the Court uses the "early confirmation procedure" wherein a plan is confirmed with value, interest, objection to claims, etc ... to be determined later. The advantage of early confirmation over courts that use late confirmation is that secured creditors start getting paid on their claims considerably earlier.

**19.** The Court notes that in the 12 month period ending July 31, 2001, 5464 petitions were filed in the Northern District, Northern Division of Alabama, of which 2692 were filed under Chapter 13. Debtors filing for bankruptcy usually have at lest one automobile, and often more than one, which require a valuation and interest rate determination. So it is desirable to have a rule of thumb to go by so not to have a separate hearing in every case, if possible.

ceives the present value of its claim and that it is sufficient to provide EvaBank with the present value of its claim under 11 U.S.C. § 1325(a)(5)(B)(ii) in light of the risks involved in this case. Thus, the Court approves 9.83% to be paid on Eva-Bank's claim.

A separate order will be entered consistent with this opinion.